United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sound Around, Inc., Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 22-20652-Civ-Scola |
| Hialeah Last Mile Fund VII LLC, | ) |
| and Hialeah Last Mile LLC, | ) |
| Defendants. | ) |

### Order

On September 14, 2022, the Court dismissed Defendant Hialeah Last Mile LLC ("HLM") from this suit with prejudice. However, it later granted reconsideration of that decision because of evidence the Defendants obtained after the Court entered dismissal. (ECF No. 63.) On reconsideration, the Court granted Plaintiff Sound Around, Inc. ("Sound Around") leave to file a second amended complaint to assert a reformation claim based on the new evidence.

Now before the Court is Sound Around's second amended complaint (SAC, ECF No. 65) and a motion to dismiss it filed by Defendants Hialeah Last Mile Fund VII LLC ("HLMF") and HLM. (Mot., ECF No. 69.) The motion has been fully briefed and is ripe for review. (*See* ECF Nos. 69, 72, 73.)

For the reasons below, the Court **denies it in part and grants it in part**. (**ECF No. 69**.)

1. **Background**

In early 2021, Sound Around entered into a purchase agreement for the sale of real property located in Miami-Dade County. (SAC ¶ 8.) It anticipated being in possession of the property by the end of 2021 following certain renovations by the seller, which were provided for in the contract. (SAC ¶ 20.)

The purchase agreement was signed by Sound Around and HLMF, but nowhere does it mention HLM. (ECF No. 65-1.) Sound Around says HLM's omission was an error that even Peter O'Donnell, a principal of both Defendants, acknowledged in his comments to a draft of the purchase agreement. (SAC ¶ 13.) In fact, HLM took steps to further the repairs required to close the sale. (SAC ¶¶ 17-22.)

Yet, the deal fell through. Several complications hindered the repairs. (SAC ¶ 23.) And—as all in Miami know too well—the real estate market shifted throughout 2021. (SAC ¶ 25.)

By February 2022, Douglas O'Donnell (another of the Defendants' principals) had written to Sound Around to advise it that, "Hialeah LM [would] not proceed under the contract" unless Sound Around agreed to pay millions of dollars more than the amounts agreed to in the purchase agreement. (SAC ¶¶ 28, 31.) As a result, this suit followed.

In its second amended complaint, Sound Around asserts claims for: reformation of the contract to include HLM (Count I); breach of contract (Count II); and anticipatory breach (Count III). In turn, the Defendants move for dismissal under Federal Rules of Civil Procedure 12(f) and 12(b)(6).

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010). These precepts apply to all civil actions, regardless of the cause of action alleged. *Kivisto*, 413 F. App'x at 138.

With these standards in mind, the Court turns to Sound Around's second amended complaint to see whether its claims withstand dismissal.

### 3. Analysis

The Defendants' motion asks the Court to: (1) strike the operative complaint under Rule 12(f); (2) dismiss the request for specific performance under Counts II and III; and (3) dismiss Sound Around's reformation claim (Count I). The Court briefly addresses the first two requests and focuses its attention on the latter.

#### A. Rule 12(f) and Specific Performance

Rule 12(f) allows the Court to strike a pleading that is "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P. 12(f). The Defendants say that the Court should strike the operative complaint because it is not an exact copy of the complaint Sound Around attached to its motion seeking reconsideration of the Court's prior Order of Dismissal. This argument is meritless. Nothing in the Court's Order authorizing Sound Around to file a second amended complaint required it to file the version of the complaint it attached to its motion. In addition, nothing in Rule 12(f) establishes the Defendants' argument to be a basis for striking a pleading. This request fails.

Equally meritless is the Defendants' second assertion that dismissal of Sound Around's claims for specific performance is appropriate because Sound Around has also requested monetary damages. It is well-established that buyers are, as a matter of law, "entitled to specific performance" in contracts for the sale of realty such that "a court of equity [may] require the seller to specifically perform the agreement and [ ] convey the legal title to the purchaser as contemplated by [an] agreement." *Henry v. Ecker*, 415 So. 2d 137, 141 (Fla. 5th DCA 1982). The Defendants cite no authority to support their premise that Sound Around's request for monetary damages prejudices its entitlement to specific performance. The second request also fails.

Having resolved these matters, the Court turns to the crux of the Defendants' motion: Sound Around's reformation claim.

### B. Reformation (Count I)

"To state a cause of action for reformation under Florida law, the complaint must allege that a contract fails to express the agreement of the parties as a result of (1) a mutual mistake or (2) a unilateral mistake by one party coupled with the inequitable conduct of the other party." *Barber v. Am.'s Wholesale Lender*, 542 F. App'x 832, 837 (11th Cir. 2013); *see also Bone & Joint Treatment Centers of Am. v. HealthTronics Surgical Services, Inc.*, 114 So. 3d 363, 366 (Fla. 3d DCA 2013).

The Defendants argue against Sound Around's reformation claim on two grounds. First, they say that Sound Around has not adequately alleged a mistake to warrant reformation. Second, they posit that reformation is not a viable remedy as a matter of law.

### (1) *Sound Around Adequately Pleads Mutual Mistake*

Sound Around says it pleads alternate theories of mutual mistake and unilateral mistake coupled with inequitable conduct to support its reformation claim. Rule 9(b) requires Sound Around to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet that requirement, Sound Around must "precisely point to the time, place, or person who made the statements or omissions" that led to the mistake. *See Barber*, 542 F. App'x at 838.

The operative complaint alleges that in "early 2021, Sound Around agreed to purchase, and [the] Defendants agreed to sell," the relevant property. (SAC ¶ 8.) It also avers that "prior to executing the agreement, one of Defendants' principals (Peter O'Donnell) realized that HLM did not appear as a signatory to one of the drafts of the agreement and informed the realtor representing the Defendants that this mistake needed to be corrected." (SAC ¶ 13.) In turn, the realtor "agreed to add the missing entity to the Purchase Agreement's signature block." (SAC ¶ 14.) But "due to an "oversight, HLM does not appear in the Purchase Agreement." (SAC ¶ 15.) Regardless, "O'Donnell, represented, confirmed, and guaranteed that HLM intended to sign and be bound by the Agreement and that HLM consented to full and complete performance of the Purchase Agreement according to its terms[.]" (SAC ¶ 16.)

Against this backdrop, the Court has no trouble finding that Sound Around's allegations certainly set forth the time, place, and persons related to HLM's purportedly mistaken omission such that Sound Around successfully pleads a *mutual* mistake. Indeed, "Florida courts have found mutual mistake where the party seeking reformation presented evidence of contact between the

contracting parties, such as discussion or negotiation of a particular provision, showing that they agreed on one thing before they put their agreement in writing and that their written agreement said something different." *Essex*, 602 F. App'x at 473.

As an alternative to its mutual mistake theory, Sound Around posits that its signing the agreement was a unilateral mistake that resulted from Defendants' falsely impressing upon it that HLMF alone had full power and authority to perform the agreement. (Opp. 7, ECF No. 72.) A complaint's allegations sounding in fraud must "set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Barber*, 542 F. App'x at 837.

Sound Around's allegations do not meet that standard. Its inequitable conduct theory boils down to paragraph 11 of the operative complaint where it alleges that "HLM's and [HLMF's] representative and manager, O'Donnell represented and warranted in the Purchase Agreement that the seller had full power and authority to both enter into the agreement and perform in accordance with its terms." (SAC ¶ 11; Opp. 7.) But in the context of a reformation claim, the inequitable conduct accompanying a unilateral mistake must precede the formation of the contract. *See Bone*, 114 So. 3d at 370.

Paragraph 11's allegations do not represent events that preceded the formation of the contract. They refer to a term of the contract. Even more, the operative complaint fails to establish the particulars as to how that representation purportedly induced Sound Around into signing the agreement despite HLM's omission.

As such, Sound Around has sufficiently pled its reformation claim under a mutual mistake theory but not a unilateral mistake theory.

### (2) *Reformation is a Viable Remedy*

In any case, "equity will decree the reformation of writing only when it is established that an agreement exists to which the writing may be made to conform [but it] may not be used to supply an agreement that was never made[.]" 9 Fla. Jur. 2d Cancellation § 54 (Nov. 2022 update).

The Defendants argue that no prior agreement to be bound existed between Sound Around and HLM such that reformation is not a viable remedy. (Mot. 10-11.) But their basis for doing so rests in the circular logic of pointing at HLM's non-inclusion in the purchase agreement itself. They present no

evidence to suggest that HLM's non-inclusion was a negotiated-for, intentional occurrence. Rather, because HLM was not included in the agreement, they say, no prior agreement existed. (*Id.*)

The flaw is patently obvious. The purpose of the reformation doctrine is to allow courts to remediate a contract where it, as drawn, "does not accurately express the true intention or agreement of the parties." *Essex Ins. Co. v. Tina Marie Entertainment, LLC*, 602 F. App'x 471, 473 (11th Cir. 2015). The discrepancy here is whether the agreement was supposed to include HLM as a party, not whether it does. And in considering whether HLM was supposed to be included as a party, the Court is not limited by the statute of frauds, which would otherwise require a written agreement between the two. *See Smith v. Royal Auto. Grp., Inc.*, 675 So.2d 144, 153 (Fla. 5th DCA 1996); Restatement (Second) of Contracts § 156 reporter's note (1981). Indeed, the Court may readily rely on factors beyond the agreement itself, such as the communications between the interested parties. *See Smith*, 675 So. 2d at 151.

Because Sound Around adequately alleges that HLM was mistakenly left out of the purchase agreement, the fact that the purchase agreement does not include HLM is inconsequential. If Sound Around prevails, the Court would not be reforming the contract to add a non-party to it. Rather, the Court would be remediating the contract's omission of a party: HLM. Its power to do so is readily supported by *Smith*. 675 So. 2d 144.

The agreement there involved three relevant players: Royal Group, Royal Olds, and Benjamin Smith. Royal Olds was a subsidiary of Royal Group, and Royal Olds agreed to make certain payments to Smith in a written instrument that both Royal Olds and Smith signed. Royal Group did not sign it, but Smith argued that to be a mistaken omission subject to reformation because he had previously agreed with Royal Group that it would guarantee Royal Olds' payments to him. Although no case in Florida "confirm[ed] the authority of the court to add a signature to a document," the Fifth District Court of Appeal acknowledged that other jurisdictions had "squarely held that such action is consistent with a court's equitable powers." *Id.* at 153. So, it ruled that Smith's reformation claim to add Royal Group's signature to the contract could survive.

The Defendants argue that *Smith* does not control because it involved adding a missing signature to a contract as opposed to the addition of a non-party to the contract. (Mot. 12.) However, that argument misapprehends what the Court is being asked to do here and mischaracterizes the decision in *Smith*.

As discussed, Count I would not have the Court reform the purchase agreement by adding a non-party to it. As in *Smith,* Count I calls upon the Court to remediate the mistaken omission of a purportedly intended party—not to include a new one. Now, the Defendants try to distinguish *Smith* by saying

that the missing signature belonged to a party that was "unequivocally bound by the agreement[,]" (Mot. 12), but that is not true.

Royal Group fully contested the agreement's bindingness on it by virtue of its signature's omission—as does HLM here. In fact, Royal Group's argument was nearly identical to, if not the same as, HLM's. *Compare Smith*, 675 So. 2d at 150 ("Royal Group then filed an answer to the reformation claim, affirmatively pleading that there was *no mutuality of assent so as to form a contract on which reformation might be based* and that reformation cannot be had for a contract void under the statute of frauds.") (emphasis added) *with* (Mot. 11) ("there is no agreement between HLM and Plaintiff on which reformation can be based."). Despite the Defendants' representations to the contrary, *Smith* was not about a forgotten signature. It resolved the same question before this Court: whether an intended party may be bound by the terms of an instrument that it mistakenly was not party to. The answer is yes.

*Smith* is admittedly distinct in that the terms of the contract there seem to have referenced Royal Group, but that fact is not dispositive. The inclusion of a reference to Royal Group may certainly have served as evidence of the mistake, but nowhere does *Smith* require reference to the purportedly intended party to enable the Court to reform a contract to include an intended party. In fact, the Fifth District Court of Appeal noted that the question of whether Royal Group truly was an intended party presented a factual issue to be resolved at trial. *See Smith*, 675 So. 2d at 152.

So, to be clear, this ruling by no means reaches the merits of Sound Around's mutual mistake theory. The Court simply rules that Sound Around's allegations are sufficient to survive the Defendants' motion to dismiss. Whether HLM was an intended party remains yet to be proven. The Defendants' safeguard moving forward "continues to lie in the plaintiff's burden of proving the intent of the parties and, by clear and convincing evidence demonstrating some ground for reformation[.]" *Smith*, 675 So. 2d at 154.

This Court must follow *Smith* given the absence of persuasive evidence that Florida's Supreme Court would rule otherwise. *Bravo v. U.S.*, 577 F.3d 1324, 1326 (11th Cir. 2009). As such, the Court need not address the Defendant's citations to non-binding California law on the subject. For these reasons, the Court concludes that reformation is a viable remedy. Because reformation remains a viable remedy to Sound Around, the Defendants' arguments concerning the statute of frauds and the merger clause are rendered moot at this stage. *See Smith* 675 So. 2d at 152-53. Count I survives.

### 4. Conclusion

In closing, the Court **denies in part and grants in part** the Defendants' motion. (**ECF No. 69**.) The Court denies the motion with respect to the Rule 12(f), specific performance, mutual mistake, and viability of reformation arguments. The Court grants the motion in respect of the Defendants' challenge to Sound Around's unilateral mistake theory. Consequently, HLM will remain a party to this action and the Court leaves the lis pendens on the property untouched.

**Done and ordered** in Miami, Florida, on January 6, 2023.

Robert N. Scola, Jr.
United States District Judge