United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sound Around, Inc., Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 22-20652-Civ-Scola |
| Hialeah Last Mile Fund VII LLC, ) | |
| and Hialeah Last Mile LLC, ) | |
| Defendants. ) | |

### Order Granting in Part and Denying in Part the Plaintiff's Motion for Summary Judgment

This matter is before the Court on the Plaintiff Sound Around, Inc.'s ("Sound Around") motion for summary judgment. (ECF No. 74.) The Defendants Hialeah Last Mile Fund VII LLC ("Fund VII") and Hialeah Last Mile LLC ("HLM") (collectively, the "Defendants") filed a response (Resp. in Opp'n, ECF No. 85) and Sound Around replied (Reply, ECF No. 95). After careful consideration of the parties' arguments, the relevant legal authorities, and the record, the Court **grants in part and denies in part** Sound Around's motion for summary judgment. (Mot., **ECF No. 74**.)

1. **Background**

This matter arises from a failed agreement between Sound Around and the Defendants for the sale of the warehouse located at 6501 NW 37th Avenue, Miami, Florida (the "Property").

In early 2021, Sound Around was looking to purchase a commercial warehouse in the Miami area when its broker, Hector Catano, contacted the Defendants' broker, Jake Zebede, regarding their sale of the Property. (Pl.'s Stmt. of Facts ¶¶ 9–10, ECF No. 75.) The Property had been listed for lease or sale sometime in 2020 by CBRE, the commercial real estate brokerage company for which Mr. Zebede worked. (*Id.* ¶¶ 5–8; Defs.' Stmt. of Facts ¶¶ 5–8, ECF No. 87.)

The parties eventually reached an agreement for purchase of the Property, together with certain renovations and improvements, for a total of $11,434,050. (Pl.'s Stmt. of Facts ¶ 16; Defs.' Stmt. of Facts ¶ 16.) Critically, however, although both sides had full knowledge that the Property was owned jointly by Fund VII and HLM, the final commercial contract for the sale and purchase of the Property (the "Purchase Agreement") completely omits HLM. (Ex. F to Pl.'s Stmt. of Facts, ECF No. 75-6.)

Throughout the parties' negotiations, it appeared clear not only that Sound Around was purchasing the entire property, but also that both Defendants were on board with the transaction. For example, CBRE's marketing materials listed the entire property for sale, and Sound Around's March 11, 2021, Letter of Intent identifies both Fund VII and HLM as the Property's sellers. (Exs. C, E to Pl.'s Stmt. of Facts, ECF Nos. 75-3, 75-5.)[1] Indeed, around the time the Purchase Agreement was being finalized, it was HLM that took steps toward completing the renovations and improvements that would have been required to close the sale. (Pl.'s Stmt. of Facts ¶¶ 27–33; Defs.' Stmt. of Facts ¶¶ 27–33.)

Nonetheless, the deal eventually fell through, and by late 2021 Douglas O'Donnell (one of the Defendants' principals) had informed Mr. Catano that "Hialeah LM w[ould] not proceed under the Contract, which [they] [we]re [t]hereby terminating[.]" (*See* Ex. Q to Pl.'s Stmt. of Facts, ECF No. 75-17.)

In the instant lawsuit, Sound Around seeks to enforce the Purchase Agreement against both Defendants. To that end, it now moves for summary judgment on its claims for reformation of the contract to include HLM (Count One), breach of contract (Count Two), and anticipatory breach of contract (Count Three).

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S.

---

[1] The Defendants object to Exhibits C, G, L, N, O, and P to Sound Around's Statement of Material Facts on the grounds that they have not been authenticated and constitute inadmissible hearsay. However, "[a]s a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invest., Inc. v. Lewis*, 752 F.2d 599, 604 n.4 (11th Cir. 1985). The exhibits at issue all appear to have been produced by either the Defendants or CBRE during discovery, and the Defendants have not argued that any of the exhibits are not what they purport to be. Moreover, because the exhibits all include statements made by the Defendants or their agents, they would be admissible as non-hearsay under Fed. R. Evid. 801(d).

144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Analysis

The primary issues presented in this case are whether the Purchase Agreement can be reformed to add HLM as a seller signatory, whether the Defendants breached the Purchase Agreement, and whether Sound Around is entitled to specific performance and other relief. As noted, the Court **grants in part and denies in part** Sound Around's motion for summary judgment.

While the record shows that the parties committed a mutual mistake in omitting HLM from the Agreement, a genuine issue of fact remains as to whether Sound Around was grossly negligent such it is not entitled to reformation (Count One). Because of this, the Court cannot grant Sound Around's request for specific performance at this time.

Moreover, while the evidence establishes that the Purchase Agreement was anticipatorily breached (Count Three), there remains a genuine issue of fact regarding Sound Around's breach of contract claim (Count Two).

### A. Summary judgment is not premature.

Preliminarily, though, the Court addresses the Defendants' argument that Sound Around's motion for summary judgment should be denied as premature. The Defendants raise two points: first, they state that, because Sound Around moved for summary judgment before they answered the second amended complaint, its motion does not address their affirmative defenses; second, they point out that the second amended complaint was filed after discovery was closed, so that they never had an opportunity to conduct discovery on the new reformation claim contained therein. The Court is not convinced.

To begin, the Defendants are not correct that summary judgment is inappropriate merely because Sound Around did not address their affirmative defenses in its opening brief. It is well settled that "[w]hen a defendant raises an affirmative defense in opposition to summary judgment, he 'has the initial burden of making a showing that the [affirmative] defense is applicable.'" *Great Am. Ins. Co. v. Mueller*, No. 21-12039, 2022 U.S. App. LEXIS 18154, at *12 (11th Cir. June 30, 2022) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)). "In other words, the burden is on the defendant to adduce evidence supporting an affirmative defense, not upon the movant to negate its existence." *Id.* (quoting *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1264 (11th Cir. 2001)). "The practical import of this legal framework is that the nonmoving party may not simply depend upon the mere allegations or defenses in his answer to counter a motion for summary judgment." *McDonough v. Greer*, No. CV 14-61526-CIV, 2015 WL 12532634, at *4 (S.D. Fla. Sept. 18, 2015) (Scola, J.) (citing *Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, No. 10-62115-CIV, 2012 WL 5635590, at *8 (S.D. Fla. Nov. 15, 2012) (Altonaga, J.)).

The Defendants' cases to the contrary are all distinguishable. For example, in *Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 912 (11th Cir. 1996), the district court had granted final judgment in favor of the plaintiff even though the latter had only moved for partial summary judgment on one of the defendant's seventeen affirmative defenses. There, "[t]he parties themselves . . . recognized the partial nature of their cross-motions for summary judgment[,]" and the Eleventh Circuit vacated the district court's final judgment only to the extent it appeared to resolve issues other than those the parties had moved on. *Id.* at 913–14. To the contrary, here, Sound Around is seeking summary judgment on all its claims. Accordingly, the Defendants "bear[] the initial burden of showing that the[ir] affirmative defense [are] applicable[,]" and it is of no consequence that Sound Around did not address them when first moving for summary judgment. *United States v. Tubbs*, No. 19-CV-80553-Civ, 2019 U.S. Dist. LEXIS 204494, at *4 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.); *see also United States v. Kafleur*, 168 F. App'x 322, 327 (11th Cir. 2006) (considering affirmative defenses abandoned even though the defendant pled them in its answer to the amended complaint because it did not include them in its motion for summary judgment or in its opposition to the plaintiff's motion for summary judgment).

Furthermore, the Defendants' argument that summary judgment is premature because they have been unable to conduct discovery on Sound Around's reformation claim is also unavailing. The Defendants previously filed a motion for limited reopening of discovery on the reformation claim pursuant

to Fed. R. Civ. P. 16(b), which the Court denied. (*See* ECF Nos. 79, 84.) In so doing, the Court explained that "[t]he Defendants have known about [the reformation claim] since at least September 2022, . . . [and] could have requested that the Court re-open discovery when the Plaintiff filed its complaint asserting the claim back in October 2022, but they chose not to do so." (*See* ECF No. 84.) Now, the Defendants rely on Fed. R. Civ. Pro. 56(d) to ask that the Court either defer ruling on Sound Around's motion or permit them the opportunity to obtain discovery on the reformation claim, but their supporting arguments are practically the same as before, and the reasons for the Court's initial denial have not changed.

Moreover, Fed. R. Civ. Pro. 56(d) requires that the Defendants provide "specified reasons" why they "cannot present facts essential to justify [their] opposition." In other words, to succeed, they "must specifically demonstrate how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the [Plaintiff's] showing of the absence of a genuine issue of fact." *See Long v. Hosseini*, No. 21-11033, 2022 U.S. App. LEXIS 24928, at *10 (11th Cir. Sep. 6, 2022) (quoting *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021)). The Defendants' broad and vague assertions that additional discovery would allow them to examine the veracity of Sound Around's witness and present additional evidence on their affirmative defenses do not meet this standard. (*See* Decl. of M. M. Nikezic ¶¶ 8–10, ECF No. 100.)

### B. Reformation (Count One)

Moving to the merits of Sound Around's motion, in support of its claims that the Purchase Agreement was breached by *both* Fund VII and HLM, Sound Around seeks reformation of the Agreement to include HLM as a seller signatory. A court of equity may reform a contract when "due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties" and, absent a mutual mistake, "when there is a mistake on the part of one side of the transaction, and inequitable conduct on the part of the other side." *Providence Square Asso. v. Biancardi*, 507 So. 2d 1366, 1369, 1372 n.3 (Fla. 1987). Sound Around argues that both paths to reformation apply here, but the Defendants correctly point out that the Court previously dismissed Sound Around's reformation claim under a unilateral mistake theory. (*See* ECF No. 78.) As such, Sound Around may only proceed on the basis of mutual mistake.

### (1) *Whether the parties committed a mutual mistake.*

According to Sound Around, the parties' omission of HLM from the Purchase Agreement was the result of a mutual mistake. "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Providence Square Asso.*, 507 So. 2d at 1372. Thus, "in reforming a written instrument, an equity court in no way alters the agreement of the parties[,]" and "only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached." *Id.* at 1369–70. "[T]he party seeking reformation based on a mutual mistake must prove its case by clear and convincing evidence." *Se. Commer. Fin., LLC v. Dominion Bus. Fin., LLC (In re United Tile & Stone, Inc.)*, 449 F. App'x 901, 906 (11th Cir. 2011) (quoting *BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1006 (Fla. 4th DCA 2005)). Because the uncontroverted evidence clearly shows that both sides intended for HLM to be part of the Purchase Agreement and, indeed, operated as if HLM was in fact part of the Purchase Agreement, the Court agrees with Sound Around.[2]

The evidence shows that the parties always considered HLM to be part of the Purchase Agreement. To begin, it is undisputed that before the parties' negotiations were underway, the Defendants (through the O'Donnell Management Company) were selling, and Sound Around offered to buy, the *entire* Property. (Pl.'s Stmt. of Facts ¶¶ 5–12, 14–15, ECF No. 75; Defs.' Stmt. of Facts ¶ 14, ECF No. 87.) In line with this, the Purchase Agreement identifies the property being transferred as that located at "6501 NW 37th Avenue, Miami Florida 33147." (Ex. F to Pl.'s Stmt. of Facts, ECF No. 75-6.) The Property is owned jointly by Fund VII and HLM in fee-simple title: specifically, Fund VII holds a 25% interest while HLM holds a 75% interest. (Pl.'s Stmt. of Facts ¶ 1, ECF No. 75; Defs.' Stmt. of Facts ¶¶ 4–5, ECF No. 87.) As such, it would make little sense for the Defendants to try to sell the entire Property unless they also understood that HLM would be a party to the transaction.

Next, the evidence shows that while the Purchase Agreement was being prepared the Defendants' representatives identified HLM's omission as a mistake on at least two occasions. First, in a March 15, 2021, email, Peter O'Donnell (one of the Defendants' representatives) notes that one of the early drafts of the Agreement was "missing one of the seller entities as a signatory"

---

[2] *See, e.g., Providence Square Asso.*, 507 So. 2d at 1371–72 ("Because the developer, Biancardi, and the other unit purchasers understood that the respective percentage ownership shares in the common elements were to be twenty-five percent each for units one, two, and three, and twelve and one-half percent each for units four and five, the declaration's provision of equal twenty-percent shares for all five units was clearly a mutual mistake.").

and explains that this is a mistake because "th[e] project is owned in a TIC." (Ex. G to Pl.'s Stmt. of Facts, ECF No. 75-7.) Then, on March 23, 2023, the Defendants' attorney, Ms. Caroline Kim, provides an edited version of the draft Agreement that adds HLM as one of the sellers. (Exs. 6, 7 to Defs.' Stmt. of Facts, ECF Nos. 87-6, 87-7.)

Admittedly, it is not totally clear what party drafted what version of the Agreement when. However, there is no evidence from which to conclude that HLM was omitted from the final draft of the Agreement intentionally. When asked how it came to be that HLM was omitted from the Agreement, Jeremiah Brach, Sound Around's corporate representative, answered that he did not know. (Ex. 3 to Defs.' Stmt. of Facts, ECF No. 87-3.) Although the Defendants cite this as evidence that there was no mistake, presumably reasoning that Sound Around would have been aware of it if there was, Mr. Brach's ignorance on this point is completely consistent with HLM's inadvertent omission from the Agreement.

Finally, there is also evidence from after the Purchase Agreement was executed evidencing the parties' understanding that HLM was part of the transaction. Significantly, for example, in the December 20, 2021, email by which D. O'Donnell notifies Sound Around of the Defendants' decision to terminate the Purchase Agreement, he exclusively speaks on behalf of "Hialeah LM":

> . . . [O]ur inability to proceed with the interior and exterior remodeling of the Property stems from *Hialeah LM's inability to obtain water at the Property.*
> . . . [T]he issue surrounding the water and the inevitable delays occasions by the current pandemic was never contemplated by either *Hialeah LM or Sound Around when the Contract was signed.* . . . [N]o one could have ever imagined the scope of these problems, which have frustrated *the ability of Hialeah LM to proceed under the Contract.*
> . . . *Hialeah LM will not proceed under the Contract*, which we are hereby terminating by this letter.

(Ex. Q to Pl.'s Stmt. of Facts, ECF No. 75-17 (emphases added).) The Defendants offer no explanation for O'Donnell's references to "Hialeah LM" in that email, which strongly indicate his understanding that HLM was one of the parties to the Purchase Agreement.[3]

---

[3] Indeed, the Defendants attempt to gloss over this by referring to the entity in the email as "Fund VII." But, as Sound Around aptly points out, all efforts to procure water were being made on behalf of HLM. (*See, e.g.*, Ex. O to Pl.'s Stmt. of Facts, ECF No. 75-15 (water deposit form listing HLM as the "customer").)

The foregoing examples are just a few critical pieces of evidence showing that HLM's omission from the Purchase Agreement was a mistake. Although the Defendants purport to dispute Sound Around's evidence, they do not put forth any contradictory materials, or even offer an alternate theory for why HLM may have been omitted from the contract. Accordingly, there is no genuine issue of material fact on whether the parties left HLM out of the Purchase Agreement by mistake.

### (2) *Whether Sound Around was grossly negligent.*

Nonetheless, the Defendants argue that even if Sound Around proves a mutual mistake, its reformation claim must still fail because it is guilty of gross negligence. Under Florida law, "a plaintiff's gross negligence [] will prevent him from obtaining reformation from a court of equity." *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, 701 (Fla. 4th DCA 2008). "[G]ross negligence requires: '(1) circumstances constituting an imminent or clear and present danger amounting to a more than normal or usual peril, (2) knowledge or awareness of the imminent danger on the part of the tortfeasor, and (3) an act or omission that evinces a conscious disregard of the consequences.'" *Moradiellos v. Gerelco Traffic Controls, Inc.*, 176 So. 3d 329, 335 (Fla. 3d DCA 2015) (quoting *Vallejos v. Lan Cargo S.A.*, 116 So. 3d 545, 551 (Fla. 3d DCA 2013)); *see also* Restat 2d of Contracts, § 157, cmt. a. ("[I]n extreme cases the mistaken party's fault is a proper ground for denying him relief for a mistake that he otherwise could have avoided."). "The question of whether one who seeks reformation is guilty of gross negligence is one of fact to be determined in the light of the circumstances of the particular case[.]" *Goodall*, 990 So. 2d at 701. The Court concludes that there is a genuine issue of material fact on whether Sound Around's conduct amounts to gross negligence.

Sound Around is correct that its failure to read the Purchase Agreement more carefully, alone, is insufficient to defeat reformation based on gross negligence. *See, e.g.*, Restat 2d of Contracts, § 157, cmt. a ("The mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude . . . reformation (§ 155)."). However, the available evidence shows a lack of care that goes beyond a mere failure to review the final Purchase Agreement: it suggests that Sound Around had multiple opportunities, both before and after the Agreement was executed, to identify and correct the omission of HLM, but nonetheless failed to do so.

For example, on March 23, 2021, before the Agreement's final execution, Defendants' counsel, Ms. Caroline Kim, provided an edited version of the Purchase Agreement to Sound Around's attorney, Mr. Vadillo, that specifically added HLM as one of the sellers. (Defs.' Stmt. of Facts ¶ 16, ECF No. 87.)

Sound Around does not dispute that it received those edits and fails to provide a clear explanation for why those changes were not incorporated into the final version of the Agreement. (*See* Pl.'s Reply Stmt. of Facts ¶¶ 13–16, ECF No. 94.)

Additionally, there are various materials in the record that may reasonably have prompted a party in Sound Around's place to identify and correct HLM's omission. As just one example, after the Agreement was executed, and while conducting due diligence under the same, Sound Around's counsel prepared a Search Summary Report on the Property clearly listing both HLM and Fund VII as the Property's owners. (Defs.' Stmt. of Facts ¶ 27, ECF No. 87.) However, despite having had the opportunities to do so, there is no evidence the Sound Around ever reached out to the Defendants to add HLM to the Purchase Agreement. *See Lindsey v. Duckworth Dev. II, LLC (In re Lindsey)*, 854 F. App'x 301, 311 (11th Cir. 2021) ("Given the explanation for how the mistake occurred and the swift steps taken to rectify it, we can't say that the bankruptcy court clearly erred in finding that Duckworth Development and its attorneys were only simply negligent.").

"[W]here the line separating simple and gross negligence is doubtful or indistinct, 'the question of whether the negligence is ordinary or gross is one which should be submitted to the jury.'" *Courtney v. Fla. Transformer, Inc.*, 549 So. 2d 1061, 1065 (Fla. 1st DCA 1989) (quoting *Foy v. Fleming*, 168 So. 2d 177, 179 (Fla. 1st DCA 1964)). Here, there is sufficient evidence from which a reasonable jury could decide either way on the issue of Sound Around's negligence.

### (3) *Whether Sound Around assumed the risk of a mistake.*

The Defendants also argue that Sound Around should be denied reformation because the risk of mistake was allocated to it under the Purchase Agreement. Sound Around counters that nothing in the Purchase Agreement allocates to it the risk of a mistake in including the correct parties. The Court agrees.

In support of their argument, the Defendants point to paragraphs 6(b) and 7 of the Purchase Agreement. Paragraph 6(b) provides Sound Around with "15 days from receipt of the evidence of title" to "deliver written notice to Seller of title defects[,]" and specifies that "[t]itle will be deemed acceptable" if Sound Around "fails to deliver proper notice of defects[.]" Paragraph 7 similarly establishes a due diligence period during which Sound Around was to determine whether the condition of the Property was suitable. However, neither of these provisions places the risk of a mistake in the Purchase Agreement's drafting on Sound Around. The mistake at issue here does not relate to either the title of the Property or its suitability, but to the final written expression of

the parties' agreement. In other words, Sound Around does not assert that the Defendants have inadequate title to the property or that the property itself is in an unacceptable condition, but that the parties inadvertently omitted HM from their written agreement.

The Defendants argue that, despite having the title commitment and other documents showing the property was owned by both HLM and Fund VII, Sound Around failed to exercise due care to ensure that the correct seller entities were included in the Agreement. This mimics the Defendants' argument as to Sound Around's gross negligence but fails to show how the Purchase Agreement placed the risk of the particular mistake at issue on Sound Around.

### C. Absent reformation, the Purchase Agreement cannot be enforced against HLM.

In an attempt to secure enforcement of the Purchase Agreement against HLM, Sound Around also argues that HLM's conduct binds it to the Purchase Agreement even if the Agreement is not reformed. Sound Around's arguments on this point largely repeat those already rejected by the Court in its order on the Defendants' motion to dismiss the amended complaint. (*See* ECF No. 36.) In brief, that order explained that the contract's "plain terms only bind Sound Around and HLMF[,]" that "the contract's merger clause provides that the contract is not binding upon a party unless it is 'signed and delivered by the party to be bound[,]'" and "that application of the statute of frauds" prevents the Court from "read[ing] an additional party into the contract as Sound Around would have it do." (*Id.* at 2–4.) Evidently taking note of that order, Sound Around now argues the statute of frauds is not an obstacle to enforcing the Purchase Agreement against HLM. However, the Court is not convinced.

Sound Around argues it is of no consequence that HLM's signature is not on the Purchase Agreement because "[a]ll the statute of frauds requires is that some 'note or memorandum' of the parties' agreement be signed" and that such documents exist in this case. (Mot. Summ. J. 12–13, ECF No. 74 (citing Fla. Stat. § 725.01).) However, this argument presupposes that there was an agreement which included HLM and that the only thing missing is HLM's signature evidencing the same. That precisely is the point of contention—whether HLM also bound itself to sell the property at issue. The Purchase Agreement, which by its own terms "constitute[s] the entire agreement" between the parties, not only omits HLM's signature, but also fails to mention HLM at all. (*See* Ex. F to Pl.'s Stmt. of Facts ¶ 20, ECF No. 75-6.) Sound Around now seeks to add HLM to the Purchase Agreement by reference to

external documents, but the case law it relies on does not support such an amendment.

The cases cited by Sound Around set forth the principle that an oral, or otherwise nonintegrated, contract for the sale of real estate may be proven by a series of documents meeting certain conditions, they do not support a modification of an already-executed agreement by reference to external documents. For example, *Rohlfing v. Tomorrow Realty & Auction Co.*, the principal case on which Sound Around relies, involved an auction sale of land, and the court specifically distinguished that from "the ordinary sale agreement in the form of a negotiated, written, signed document, *which is completed when the second party signs the agreement*[.]" 528 So. 2d 463, 464, 466 (Fla. 5th DCA 1988) (emphasis added).[4] Indeed, none of the cases cited by Sound Around involved a comprehensive commercial contract for the sale of land like that at issue here, much less one with a merger clause providing that it is not binding upon a party unless it is "signed and delivered by the party to be bound." (*See* Ex. F to Pl.'s Stmt. of Facts ¶ 20, ECF No. 75-6.)

Moreover, even if the Court were to consider the "numerous other documents" provided by Sound Around, they would still fail to satisfy the statute of frauds against HLM. (*See* Mot. Summ. J. 13, ECF No. 74 (citing SMF ¶¶ 27–36).) While a binding real estate agreement may be proven by a series of written documents or instruments, said materials must be "*sufficiently definite and certain* to establish a contract to buy land that complies with the statute of frauds[.]" *Rohlfing*, 528 So. 2d at 465 (emphasis added). To that end, the case law requires that "the signed writing expressly or implicitly refer[] to the unsigned document[,]" and explains that "[a]n implied reference may be established by either the fact that the documents relate to the same subject matter or by physical annexation." *See Kolski v. Kolski*, 731 So. 2d 169, 171–72 (Fla. 3d DCA 1999) (quoting *Cook v. Theme Park Ventures, Inc.*, 633 So. 2d 468, 471 (Fla. 5th DCA 1994); *First Guaranty Corp. v. Palmer Bank and Trust Co. of Fort Myers, N.A.*, 405 So. 2d 186, 188 (Fla. 2d DCA 1981)). The materials provided by Sound Around do not meet these requirements.

The documents presented by Sound Around relate to the renovation and remodeling of the Property by third-party Barr Commercial Construction, Inc. ("Barr Construction"), *not* to the purchase and sale of the Property. Although HLM signed various agreements with Barr Construction, none of those

---

[4] *See generally* 1 Florida Real Estate Transactions § 1.02 (2022) ("The[] two means of complying with the Statute are not the same, however. In the first, there is a written contract that integrates the entire understanding between the parties. In the second, there is a parol agreement between the parties with a written memorandum embodying that agreement's essential elements.").

agreements expressly mention the Purchase Agreement. In the same vein, neither those agreements nor the materials related thereto implicitly reference the Purchase Agreement as contemplated by the case law because their subject matter does not relate to the affirmative exchange of the Property. In other words, even assuming those materials show HLM carrying out certain obligations imposed by the Purchase Agreement, as Sound Around argues, they do not clearly show HLM binding itself to a sale of its interest in the Property.

With the foregoing in mind, Sound Around's argument that HLM is bound by the Purchase Agreement, even if not a party thereto, falls short. As noted, Sound Around's argument that HLM assumed and assented to the Purchase Agreement through its actions following the Purchase Agreement's execution was rejected by the Court in its order on the Defendants' motion to dismiss the amended complaint. (*See* ECF No. 36.) Sound Around once again cites to numerous cases in support of the principle that non-parties can be bound by a contract when they have acted in a manner evidencing their assent to its terms. However, as before, the cases cited by Sound Around "involve arbitration, financial, and/or settlement agreements. None involves the sale of real property. That distinction is crucial because those contexts do not implicate the statute of frauds." (*See id.* at 3.)

In short, considering the requirements of the statute of frauds, absent reformation, the fully integrated Purchase Agreement cannot be enforced against HLM.

### D. Beach and Anticipatory Breach (Counts Two and Three)

Having concluded that summary judgment is not warranted on Sound Around's reformation claim, the Court cannot find that HLM breached the Purchase Agreement. However, it will address Sound Around's motion for summary judgment on breach of contract (Count Two) and anticipatory breach of contract (Count Three) as to Fund VII.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). Further, "[a]n anticipatory breach 'occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007) (quoting *Alvarez v. Rendon,* 953 So. 2d 702, 709 (Fla. 5th DCA 2007)). For the reasons stated below, the Court concludes only that the contract was anticipatorily breached.

Sound Around's motion for summary judgment simultaneously argues that the Purchase Agreement was breached and anticipatorily breached. Because Sound Around argues breach and anticipatory breach in the same section of its motion, it seems to be saying that the same conduct by the Defendants satisfies both counts. (Pl.'s Mot. for Summ. J. 5–6, ECF No. 74.) Indeed, in its reply in support of summary judgment, Sound Around argues that the evidence showing the Defendants repudiated the contract "alone is sufficient to prove *both* an anticipatory breach and a breach of the Purchase Agreement." (*See* Pl.'s Reply in Supp. of Mot. for Summ. J. 3, ECF No. 95.) (emphasis in original).) However, Count Two of Sound Around's second amended complaint does not base the Defendants' breach on their repudiation of the contract: instead, it focuses exclusively on the Defendants' failure to comply with their obligations to renovate and remodel the property as specified in the Purchase Agreement. (Pl.'s Second Am. Compl. ¶¶ 57–60, ECF No. 65.) Sound Around cannot now retroactively recast its breach of contract claim to match the available evidence. *See, e.g.*, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and [] 'at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).'") (quoting *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Viewing the evidence in the record in the light most favorable to the Defendants, as it is required to do at the summary judgment stage, the Court cannot conclude that they breached the Purchase Agreement by refusing to comply with their construction obligations. Specifically, the Defendants have put forth evidence that the majority of improvements contemplated by the contract have been completed. (*See* Defs.' Resp. Stmt. of Facts ¶ 50, ECF No. 85-1.) The only exception is construction of office space, which has also resumed. (*See id.*) Sound Around does not offer any evidence to dispute this, and other materials which might implicate the Defendants—such as the December 20, 2021, Douglas D. O'Donnell email terminating the Purchase Agreement—do not show their refusal to fulfill their construction obligations so much as their manipulation of the difficulties stemming from those obligations to justify their early termination of the Agreement. (*See* Ex. Q to Pl.'s Stmt. of Facts, ECF No. 75-17 ("[N]o one could have ever imagined the scope of these problems, which have frustrated the ability of Hialeah LM to proceed under the Contract.").) Moreover, the Purchase Agreement does not set forth a specific time by which the Defendants were to perform their renovation and remodeling obligations, stating only that the "Closing Date" would "be 7 calendar days

following the issuance of the Certificate of Completion" of those obligations. (Ex. F to Pl.'s Stmt. of Facts ¶ 23, ECF No. 75-6.)

Notwithstanding the foregoing, the Court has no issue concluding that the Purchase Agreement was anticipatorily breached. Sound Around's claim for anticipatory breach is based on the Defendants' statements and conduct informing it that they would not proceed under the Purchase Agreement (Pl.'s Second Am. Compl. ¶¶ 70–71, ECF No. 65.), and it is more than supported by the evidence. For example, in his December 20, 2021, email Douglas D. O'Donnell specifically states "that Hialeah LM will not proceed under the Contract, which we are hereby terminating by this letter." (Ex. Q to Pl.'s Stmt. of Facts, ECF No. 75-17.) In line with this, on February 17, 2022, counsel for the Defendants sent Sound Around's counsel a letter confirming that "by e-mail dated December 20, 2021[,]" the "Seller" had "terminat[ed] the Purchase Agreement." (ECF No. 75-18.) That letter also reiterated that the "Seller nonetheless would agree to proceed with the transaction contemplated under the Purchase Agreement *if* Buyer agrees to an increased purchase price of $3,000,000, or such other amount as the parties may mutually agree to." (*Id.* (emphasis added).)[5] This is sufficient to establish an anticipatory breach of the contract. *See, e.g.*, *24 Hr Air Serv. v. Hosanna Cmty. Baptist Church, Inc.*, 322 So. 3d 709, 712 (Fla. 3d DCA 2021) ("The law is clear that where one party to the contract arbitrarily demands performance not required by the contract and couples this demand with a refusal to further perform unless the demand is met, the party has anticipatorily repudiated the contract[.]"). And, as if that were not enough, Sound Around has also offered the declaration of its representative, Jerry Brach, explaining that the Defendants have continued to refuse to sell the property to Sound Around for the purchase price agreed to in the Agreement. (Ex. H to Pl.'s Stmt. of Facts ¶ 12, ECF No. 75-8.)

The Defendants have not rebutted these materials with any evidence of their own, and their arguments that they have continued all construction work

---

[5] The Defendants attempt to avoid the inconvenient statements in this letter by arguing that it constitutes an attempt to compromise a dispute or claim and is therefore inadmissible under Fed. R. Evid. 408. However, the letter was sent by the Defendants' counsel in response to an initial letter from Sound Around's counsel formally notifying the Defendants of their breach and allowing them an opportunity to cure in accordance with the Purchase Agreement. (*See* Ex. T to Pl.'s Stmt. of Facts, ECF No. 75-20.) Thus, by offering "to proceed" in exchange for "an increased purchase price of $3,000,000" the Defendants were not engaging Sound Around in the sort of "compromise negotiations" contemplated by Fed. R. Evid. 408. Moreover, even if the parties had been engaged in settlement discussions, Rule 408 only prohibits such evidence to the extent it is being used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Neither is the case here because Sound Around is only offering the letter as proof of the Defendants' refusal to proceed under the contract.

contemplated by the contract are inapposite in light of the anticipatory repudiation. *See, e.g., 24 Hr Air Serv.*, 322 So. 3d at 712 ("Despite the Contractor's argument that it never abandoned the job, its demand for safety assurances coupled with its refusal to complete the agreed repairs until such assurances were provided was an anticipatory breach of the contract.").

### E. Specific performance is not merited at this time.

As noted, because the Court has not concluded that the Purchase Agreement can be enforced against HLM, it cannot grant specific performance at this stage. Sound Around cleverly attempts to avoid this result by arguing that it is entitled to specific performance regardless of whether HLM is a party to the Purchase Agreement because HLM previously consented to the Property's transfer. Putting aside Sound Around's scant authority in support of this position (and the major issue of whether HLM adequately consented to the transaction), Sound Around's argument once again altogether ignores the limitations imposed by the statute of frauds.

Florida law is clear that "[f]or a real estate purchase contract to be enforceable through specific performance it must first be 'embodied in one or more written documents or memoranda *signed by the party against whom enforcement is sought.*'" *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007) (emphasis added) (quoting *De Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st DCA 2007)); *see also, e.g., Fox v. Sails at Laguna Club Dev. Corp.*, 403 So. 2d 456, 458 (Fla. 3d DCA 1981) (same). In *Brace v. Comfort*, for example, the court affirmed denial of specific performance where the individual to be charged "was not a party to" and "ha[d] not signed a contract" with those seeking the remedy. 2 So. 3d 1007, 1012 (Fla. 2d DCA 2008); *see also Broward Cnty. v. Conner*, 660 So. 2d 288, 290 (Fla. 4th DCA 1995) ("The county argues that the agreement is not enforceable because it violates the provision in our statute of frauds which requires that a contract for sale of land be signed by the party to be charged, section 725.01, Florida Statutes (1993). We agree."); *Cohodas v. Russell*, 289 So. 2d 55, 56 (Fla. 2d DCA 1974) (reversing trial court's order denying defendants' motion to dismiss plaintiff's amended complaint for specific performance where the letter from defendants purporting to be the parties' written contract for the sale of land failed to satisfy the statute of frauds).

The Purchase Agreement has not been reformed to include HLM as one of the seller signatories and, as such, Sound Around "ha[s] not and cannot allege a written contract with [HLM], as is necessary for a specific performance claim." *See Brace v. Comfort*, 2 So. 3d 1007, 1012 (Fla. 2d DCA 2008).

### F. The Purchase Agreement excludes the remedy of damages.

Although Sound Around does not seek an award of damages in a specific amount, it asks the Court to rule that it is entitled to recover (one) damages incidental to specific performance under Count Two and (two) all other monetary damages suffered under Count Three. Because the Court has neither granted summary judgment on Count Two nor determined that Sound Around is entitled to specific performance, its first request is denied. Moreover, because the Purchase Agreement limits Sound Around's remedies upon default to return of its deposit or specific performance, its second request is denied as well.

"Under Florida law, a remedy stated in the contract excludes other contract remedies so long as the contract's language 'discloses that the parties *intended* to limit the remedy to the one stated.'" *Am. Univ. of the Caribbean v. Caritas Healthcare*, 484 F. App'x 322, 331 (11th Cir. 2012) (emphasis added) (quoting *Coastal Computer Corp. v. Team Mgmt. Sys., Inc.*, 624 So. 2d 352, 353 (Fla. 2d DCA 1993)). Thus, "Florida cases where courts have construed contractually stated remedies as exclusive have involved contracts containing mandatory or limiting language." *Coastal Comput. Corp.*, 624 So. 2d at 353. This is because "[t]he wording of the contracts in th[o]se cases indicate[d] that their limitation of remedies provisions were 'mutual, unequivocal and reasonable.'" *Id.*

Paragraph 14(a) of the Purchase Agreement, as executed, provides as follows:

> 14. DEFAULT:
> (a) In the event the sale is not closed due to any default or failure on the part of the **Seller** other than failure to make title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit ~~without thereby waiving any action for damages resulting from Seller's breach and may seek to recover such damages~~ or seek specific performance. If the Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the brokerage fee.

The crossed-out language was retained in the final version of the Purchase Agreement, which shows the parties' initials at the bottom of the page. (*See* Ex. F to Pl.'s Stmt. of Facts ¶ 14, ECF No. 75-6.) Sound Around argues that paragraph 14's plain terms merely authorize it to elect to receive its deposit or seek specific performance, but that nothing in it expressly limits Sound Around to such remedies. The Court does not agree.

To begin, absent the crossed-out language, paragraph 14(a) is at best unclear as to whether the parties intended to limit the Buyer's remedies to a

return of its deposit or specific performance. In providing that Sound Around "may elect" one option "or" the other, paragraph 14(a) could reasonably be read to circumscribe Sound Around to those two remedies. At the same time, though, it fails to include the more definitive language that previous cases have found clearly limiting. Indeed, the Court's research reveals that other courts interpreting language like that here have come out both ways on the issue. *Compare Lasco Enters. v. Kohlbrand*, 819 So. 2d 821, 825 (Fla. 5th DCA 2002) ("[T]he language of paragraph D did not place a limitation upon their available remedies, but instead, simply provided that the [owners] 'may' proceed in equity to enforce its rights or 'may' elect to receive the return of earnest money deposit. The provision does not state that the [owners] 'shall' limit themselves to such remedies.") *with Redington Grand, Ltd. Liab. P'ship v. Level 10 Props., Ltd. Liab. Co.*, 22 So. 3d 604, 606 (Fla. 2d DCA 2009) (interpreting language that buyer "may either" get deposit "or" seek specific performance to mean that "the contract limited the [b]uyers' remedy to the return of all deposits or specific performance").

In light of the above, the Court cannot ignore the parties' decision to strike out the language from paragraph 14(a) (*i.e.*, "without thereby waiving any action for damages resulting from Seller's breach and may seek to recover such damages") that would have explicitly allowed Sound Around to recover damages. It is particularly significant that the parties did not simply omit that language from the paragraph, but instead crossed it out in a clear expression of their intent to limit Sound Around's remedies. *See, e.g., Infinity Design Builders, Inc. v. Hutchinson*, 964 So. 2d 752, 755 (Fla. 5th DCA 2007) (interpreting crossed out and initialed section on mediation and arbitration as proof that parties had not agreed to arbitration). Thus, the Court need not even look beyond the four corners of the Purchase Agreement to determine that it limits Sound Around's remedies upon default to a return of its deposit or specific performance.

### G. Attorney's fees cannot be granted at this time.

Finally, Sound Around seeks its attorney's fees in the event summary judgment is granted in its favor as the "prevailing party" pursuant to paragraph 15 of the Purchase Agreement. (*See* Ex. F to Pl.'s Stmt. of Facts ¶15, ECF No. 75-6.) However, the Defendants correctly point out that, under Florida law "[t]he party prevailing on the 'significant issues' in the litigation is the party that should be considered the prevailing party for attorney's fees." *Schoenlank v. Schoenlank*, 128 So. 3d 118, 121 (Fla. 3d DCA 2013) (quoting *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992)). Because the instant order does not grant all, or even most, of Sounds Around's requested relief, significant

issues remain outstanding, and the Court cannot conclude at this time that Sound Around is the prevailing party for purposes of paragraph 15.

### 4. Conclusion

For the reasons stated above, Sound Around's motion for summary judgment is **granted in part and denied in part**. (Mot., **ECF No. 74**.) To summarize, the Court grants the motion with respect to Sound's Around's claim for anticipatory breach of contract (Count Three) against Fund VII only, but denies it with respect to Sound Around's claims for reformation (Count One), breach of contract (Count Two), anticipatory breach of contract (Count Three) against HLM, specific performance, other monetary damages, and attorney's fees.

**Done and ordered** in Miami, Florida, on April 7, 2023.

_____
Robert N. Scola, Jr.
United States District Judge